# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA
### Civil Division

|  |  |
|---|---|
| **SUE LEE,** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | ) **Civil Action No. 1:21-cv-1006** |
|  | ) |
| **PUBLIC COMPANY ACCOUNTING** | ) |
| **OVERSIGHT BOARD, et al.** | ) |
|  | ) |
| **Defendants.** | ) |

## DEFENDANTS' ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIM

Defendants, the Public Company Accounting Oversight Board ("PCAOB") and William D. Duhnke III, by counsel, hereby respond to Plaintiff's Amended Complaint [Dkt. No. 18] as follows:

### General Denial

Except as stated expressly herein, Defendants deny each and every claim, theory, characterization, and allegation asserted in the Amended Complaint, including, without limitation, any allegation contained in the preamble, headings, and subheadings.

### Response to Specific Allegations

In response to the specific numbered allegations in the Amended Complaint, Defendants state as follows:

**Nature of the Case**

1.      The allegations contained in Paragraph 1 of the Amended Complaint constitute Plaintiff's characterizations of her lawsuit and therefore do not require a response.  To the extent a response is required, Defendants deny the allegations.

**The Parties**

2.      Defendants lack information sufficient to admit or deny the allegations contained in Paragraph 2 of the Amended Complaint and therefore deny the allegations.

3.      In response to the allegations in Paragraph 3 of the Amended Complaint, Defendants state that PCAOB is a non-profit corporation created by the Sarbanes-Oxley Act of 2002 and that it maintains its District of Columbia headquarters at 1666 K Street, N.W., Suite 800, in Washington, D.C.

4.      Defendants admit the allegations contained in Paragraph 4 of the Amended Complaint.

**Jurisdiction and Venue**

5.      The allegations contained in Paragraph 5 of the Amended Complaint constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations.

6.      The allegations contained in Paragraph 6 of the Amended Complaint constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations.

7.      The allegations contained in Paragraph 7 of the Amended Complaint constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations.

2

## Ms. Lee's Employment with PCAOB

8.      Defendants admit the allegations contained in Paragraph 8 of the Amended Complaint.

9.      In response to the allegations contained in Paragraph 9 of the Amended Complaint, Defendants admit that throughout her employment with PCAOB, Plaintiff reported directly to Mr. Duhnke. Defendants also admit that Mr. Duhnke is a Caucasian male. Defendants deny the remaining allegations contained in Paragraph 9.

10.      In response to the allegations contained in Paragraph 10 of the Amended Complaint, Defendants admit that in July 2019, Plaintiff assumed the position of acting Chief Administrative Officer of PCAOB.  Defendants deny the remaining allegations contained in Paragraph 10.

11.      Defendants deny the allegations contained in Paragraph 11 as stated.  In response, Defendants state that Plaintiff was required to carry out a variety of duties, including providing executive oversight to the Office of Human Resources, the Office of Finance, the Budget Office, and the Facilities Department within the Office of Administration.

12.      In response to the allegations contained in Paragraph 12 of the Amended Complaint, Defendants admit that Plaintiff was at times required to visit other PCAOB offices. Defendants deny that such visits were required frequently, and Defendants state that many of Plaintiff's trips were undertaken in violation of PCAOB's Mandatory Telework Period and were also unapproved, improper, and/or excessive, as described in the Counterclaim.  Defendants deny the remaining allegations contained in Paragraph 12.

13.      In response to the allegations contained in Paragraph 13 of the Amended Complaint, Defendants admit that Plaintiff was expected to compile accurate data from her travel

to other offices and to update Mr. Duhnke with complete information, but Defendants deny that Plaintiff did so.  Specifically, Defendants deny that Plaintiff accurately reported the nature, purpose, and extent of her travel, particularly to the Boston area, where she maintained a residence, or provided any data that would justify the extent of that travel.  Defendants deny the remaining allegations contained in Paragraph 13.

14.    In response to the allegations contained in Paragraph 14 of the Amended Complaint, Defendants admit that Plaintiff was expected to update Mr. Duhnke with complete information, but Defendants deny that Plaintiff did so.  Specifically, Defendants deny that Plaintiff accurately updated Mr. Duhnke concerning the nature, purpose, and extent of her travel, particularly to the Boston area, where she maintained a residence, or provided any data that would justify the extent of that travel.  Defendants deny the remaining allegations contained in Paragraph 14.

15.    In response to the allegations contained in Paragraph 15 of the Amended Complaint, Defendants admit that Mr. Duhnke instructed Plaintiff to assist in transitioning the Boston satellite office to a more affordable suburban office in the Boston area.  Defendants deny the remaining allegations in Paragraph 15. Without limiting such denial, Defendants state that PCAOB had already identified the Boston office as an inefficient use of PCAOB resources and had made the decision to evaluate options for relocating the office to another location.

16.    Defendants deny the allegations contained in Paragraph 16 of the Amended Complaint.

17.    In response to the allegations contained in Paragraph 17 of the Amended Complaint, Defendants state that the Board and other executives were generally aware of

4

Plaintiff's duties as acting Chief Administrative Officer.  Defendants deny all other allegations contained in Paragraph 17.

18.     In response to the allegations contained in Paragraph 18 of the Amended Complaint, Defendants state that the 2019 performance evaluation speaks for itself, and Defendants deny any erroneous, misleading, or out-of-context characterizations thereof.

19.     In response to the allegations contained in Paragraph 19 of the Amended Complaint, Defendants admit that, with the full support of Mr. Duhnke, Plaintiff received a discretionary bonus for 2019, and Plaintiff's role was changed from Acting Chief Administrative Officer to Chief Administrative Officer in December 2019.

20.     In response to the allegations contained in Paragraph 20 of the Amended Complaint, Defendants admit that the PCAOB Board had authorized a review of the organization's utilization of satellite offices and that most PCAOB employees were aware of this initiative.  Defendants deny that Mr. Duhnke announced to anyone that Plaintiff was authorized to make, or would be making, the number of trips to the satellite offices she eventually made and charged to PCAOB.  Defendants deny the remaining allegations in Paragraph 20.

21.     Defendants deny the allegations contained in Paragraph 21 of the Amended Complaint as stated.  Defendants admit that PCAOB closed five satellite offices and transitioned those workforces to work-from-home status, but Defendants deny these decisions were "based on the data Ms. Lee compiled from her regional and satellite office visits," or that Ms. Lee submitted any data that would justify her excessive travel to Boston.

22.     Defendants deny the allegations contained in Paragraph 22 of the Amended Complaint.

23.     Defendants deny the allegations contained in Paragraph 23 of the Amended Complaint.

24.     In response to the allegations contained in Paragraph 24 of the Amended Complaint, Defendants admit that Mr. Duhnke asked Plaintiff for directions on or about February 12, 2020.  Defendants deny the remaining allegations contained in Paragraph 24, and Defendants specifically deny that they were aware of the frequency and purpose of Plaintiff's many unnecessary and purely personal trips, which she improperly expensed to PCAOB.

25.     Defendants deny the allegations contained in Paragraph 25 of the Amended Complaint.

26.     Defendants deny the allegations contained in Paragraph 26 of the Amended Complaint.

27.     In response to the allegations contained in Paragraph 27 of the Amended Complaint, Defendants admit that throughout her tenure, Plaintiff reported directly to Mr. Duhnke in his capacity as PCAOB CEO.  Defendants deny all other allegations contained in Paragraph 27.

28.     The allegations contained in Paragraph 28 of the Amended Complaint constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations.  Additionally, the allegations contained in Paragraph 28 purport to characterize the contents of the written bylaws of PCAOB, which speak for themselves, and Defendants deny any erroneous, misleading, or out-of-context characterizations thereof.  Defendants also deny that any aspect of the decision to discharge Plaintiff violated the PCAOB's bylaws.

29.     In response to the allegations contained in Paragraph 29 of the Amended Complaint, Defendants state that Mr. Duhnke's conversation with PCAOB's legal counsel are privileged and need not be disclosed in response to Plaintiff's allegations.  Defendants deny all other allegations contained in Paragraph 29.  Defendants also deny that any aspect of its decision to discharge Plaintiff violated any PCAOB policy or procedure, or any law.

### Defendants' Discriminatory Conduct Toward Ms. Lee

30.     Defendants deny the allegations contained in Paragraph 30 of the Amended Complaint.

31.     Defendants deny the allegations contained in Paragraph 31 of the Amended Complaint.

32.     Defendants deny the allegations contained in Paragraph 32 of the Amended Complaint.

33.     Defendants deny the allegations contained in Paragraph 33 of the Amended Complaint.

34.     Defendants deny the allegations contained in Paragraph 34 of the Amended Complaint.

35.     Defendants deny the allegations contained in Paragraph 35 of the Amended Complaint.

36.     Defendants deny the allegations contained in Paragraph 36 of the Amended Complaint.

37.     Defendants deny the allegations contained in Paragraph 37 of the Amended Complaint.

38.     Defendants deny the allegations contained in Paragraph 38 of the Amended Complaint.

39.     Defendants deny the allegations contained in Paragraph 39 of the Amended Complaint.

40.     In response to the allegations contained in Paragraph 40 of the Amended Complaint, Defendants admit that Mr. Duhnke's affiliation with the Republican Party was generally well-known.  Defendants deny all other allegations contained in Paragraph 40.

41.     Defendants deny the allegations contained in Paragraph 41 of the Amended Complaint.

42.     Defendants deny the allegations contained in Paragraph 42 of the Amended Complaint.

43.     Defendants deny the allegations contained in Paragraph 43 of the Amended Complaint.

**Defendants' Termination of Ms. Lee**

44.     Defendants deny the allegations contained in Paragraph 44 of the Amended Complaint.

45.     In response to the allegations contained in Paragraph 45 of the Amended Complaint, Defendants admit that on October 19, 2020, PCAOB shut off Plaintiff's access to her work email and her PCAOB cell phone in light of Plaintiff's alleged misconduct that led to an internal investigation by PCAOB's independent Office of Internal Oversight and Performance Assurance ("IOPA").  Defendants also admit that PCAOB did not give Plaintiff advance notice of this action.  Defendants deny all other allegations contained in Paragraph 45.

46.     In response to the allegations contained in Paragraph 46 of the Amended Complaint, Defendants admit that Mr. Duhnke advised Plaintiff during a telephone call that she was being suspended as a result of a charge of misconduct against her.  Defendants deny all other allegations contained in Paragraph 46.

47.     In response to the allegations contained in Paragraph 47 of the Amended Complaint, Defendants admit that Plaintiff was informed that a decision had been made to shut off her access to her work email and PCAOB cell phone in light of the alleged misconduct that led to the investigation.  Defendants deny all other allegations contained in Paragraph 46.

48.     In response to the allegations contained in Paragraph 48 of the Amended Complaint, Defendants admit that Mr. Duhnke informed Plaintiff that PCAOB was preparing a report related to the allegations against her and that she would have an opportunity to respond to the report.  Defendants deny all other allegations contained in Paragraph 48.

49.     Defendants deny the allegations in Paragraph 49 of the Amended Complaint as stated.  Although Plaintiff did not receive a copy of the internal report, the results of the report were discussed with her, she was provided an opportunity to respond, and she did respond. Defendants deny all other allegations contained in Paragraph 49.

50.     Defendants admit the allegations contained in Paragraph 50 of the Amended Complaint.

51.     In response to the allegations contained in Paragraph 51 of the Amended Complaint, Defendants admit that Mr. Duhnke cited Plaintiff's excessive travel as among the reasons for her termination.  Defendants deny all other allegations contained in Paragraph 51.

52.     Defendants deny the allegations contained in Paragraph 52 of the Amended Complaint.

53.     Defendants deny the allegations contained in Paragraph 53 of the Amended Complaint.

54.     To the extent the allegations contained in Paragraph 54 of the Amended Complaint constitute conclusions of law, no response is required.  To the extent a response is required, Defendants deny the allegations.  Additionally, the allegations contained in Paragraph 54 purport to characterize the contents of the written bylaws of PCAOB, which speak for themselves, and Defendants deny any erroneous, misleading, or out-of-context characterizations thereof.  Defendants deny all other allegations contained in Paragraph 54 and specifically deny that any aspect of the decision to discharge Plaintiff violated the PCAOB's bylaws.

55.     Defendants deny the allegations contained in Paragraph 55 of the Amended Complaint.  Mr. Duhnke provided the Board accurate information regarding Plaintiff's problematic conduct during her tenure with PCAOB, and the Board reviewed the information as part of Mr. Duhnke's consultation with the Board.

56.     In response to the allegations contained in Paragraph 56 of the Amended Complaint, Defendants state that Mr. Duhnke's conversation with PCAOB's legal counsel are privileged and need not be disclosed in response to Plaintiff's allegations.  Defendants deny all other allegations contained in Paragraph 56.  Defendants also deny that any aspect of its decision to discharge Plaintiff violated any PCAOB policy or procedure, or any law.

57.     Defendants deny the allegations contained in Paragraph 57 of the Amended Complaint.

58.     Defendants deny the allegations contained in Paragraph 58 of the Amended Complaint as stated.  Following Plaintiff's discharge, PCAOB's CFO assumed Plaintiff's duties in an "acting" capacity pending the organization's recruitment and hiring of a new CAO.  This

process remains underway, and no replacement for Plaintiff has yet been hired.  Defendants deny

any suggestion that PCAOB's termination of Plaintiff or the hiring of her replacement was

motivated in any way by their respective races, national origins, or political affiliations.

59.     The allegations contained in Paragraph 59 of the Amended Complaint constitute

conclusions of law to which no response is required.  To the extent a response is required,

Defendants deny the allegations.  Additionally, the allegations purport to characterize the

contents of the written bylaws of PCAOB, which speak for themselves, and Defendants deny any

erroneous, misleading, or out-of-context characterizations thereof.  Defendants deny all other

allegations contained in Paragraph 59.

60.     Defendants deny the allegations contained in Paragraph 60 of the Amended

Complaint.

61.     Defendants deny the allegations contained in Paragraph 61 of the Amended

Complaint.

62.     Defendants deny the allegations contained in Paragraph 62 of the Amended

Complaint.

63.     Defendants deny the material allegations contained in Paragraph 63 of the

Amended Complaint.  Defendants specifically deny that any employee's race, national origin, or

political affiliation has played a role in PCAOB's actions and decisions concerning the terms and

conditions of employment.

64.     Defendants lack knowledge sufficient to admit or deny the specific allegations

regarding the alleged SEC investigation referred to in Paragraph 64 of the Amended Complaint,

including the allegations regarding its initiation or scope.  Defendants state, on information and

belief, that in September 2019, the SEC received an anonymous complaint and, in response

11

thereto, an investigation ensued of certain matters that are not relevant to the claims in this litigation.  Defendants admit that Mr. Duhnke continuously served in his position at the PCAOB, without any suspension or termination, during his tenure as Chairman.

65.     Defendants deny the allegations contained in Paragraph 65 of the Amended Complaint.  By way of further answer, Defendants state that employee termination decisions are made for a wide variety of reasons and that decisions to grant or not grant severance packages depend on several factors.  Defendants deny any suggestion that such decisions have ever been based on an employee's race, national origin, political affiliation, or any other protected characteristic.

66.     In response to the allegations contained in Paragraph 66 of the Amended Complaint, Defendants admit that Plaintiff was not offered severance in connection with her discharge for misconduct.  Defendants deny all other allegations contained in Paragraph 66.

### Defendants' Misconduct Following Ms. Lee's Termination

67.     In response to the allegations contained in Paragraph 67 of the Amended Complaint, Defendants admit that Plaintiff's attorney contacted PCAOB to discuss her discharge.  Defendants deny all other allegations contained in Paragraph 67.

68.     In response to the allegations contained in Paragraph 68 of the Amended Complaint, Defendants admit that Plaintiff mismanaged an internal project related to the implementation of financial and human resources information management software, that such mismanagement, as well as her abusive and retaliatory behavior, were factors that contributed to PCAOB's decision to discharge her, and that this reasoning was expressed to Plaintiff and her counsel.  Defendants deny that this alleged "third reason" had not previously been discussed, and Defendants further deny any suggestion that this rationale is pretext for unlawful discrimination.

69.     Defendants deny the allegations contained in Paragraph 69 of the Amended Complaint.

70.     Defendants deny the allegations contained in Paragraph 70 of the Amended Complaint.

71.     Defendants deny the allegations contained in Paragraph 71 of the Amended Complaint.

72.     Defendants deny the allegations contained in Paragraph 72 of the Amended Complaint.  Without limiting the foregoing, Defendants specifically deny that subjects raised and/or discussed in pre-litigation settlement discussions were raised and/or discussed in retaliation for any allegations advanced by Plaintiff or in an effort to unlawfully dissuade Plaintiff from exercising her rights.  Instead, between November 2020 and February 2021 the parties discussed their respective claims and defenses in an effort to resolve their dispute without litigation.

73.     Defendants deny the allegations contained in Paragraph 73 of the Amended Complaint as stated.  PCAOB terminated Plaintiff on October 23, 2020, at which time Plaintiff was notified that her termination was due in part to her excessive, unapproved travel.  Plaintiff's counsel asserted legal claims just over a week later, prior to the time that Plaintiff and PCAOB had had any opportunity or occasion to discuss the parties' respective claims and counterclaims, and therefore prior to the time that PCAOB notified Plaintiff of her liability to the organization.

74.     Defendants deny the allegations contained in Paragraph 74 of the Amended Complaint as stated.  Chairman Duhnke, Plaintiff's then-supervisor, did not review or approve Ms. Lee's travel expenses that were submitted for reimbursement.

13

75.     Defendants deny the allegations contained in Paragraph 75 of the Amended Complaint.  Plaintiff was reimbursed travel expenses because Plaintiff herself submitted them while hiding the improper nature of her travel from her then-supervisor, Chairman Duhnke.

76.     Defendants deny the allegations contained in Paragraph 76 of the Amended Complaint.  Without limiting the foregoing, Defendants specifically deny that subjects raised and/or discussed in pre-litigation settlement discussions were raised and/or discussed in retaliation for any allegations advanced by Plaintiff.  Instead, between November 2020 and February 2021 the parties discussed their respective claims and defenses in an effort to resolve their dispute without litigation.

77.     Defendants deny the allegations contained in Paragraph 77 of the Amended Complaint.

78.     Defendants deny the allegations contained in Paragraph 78 of the Amended Complaint.

79.     Defendants admit the allegations contained in Paragraph 79 of the Amended Complaint.

80.     In response to the allegations contained in Paragraph 80 of the Amended Complaint, Defendants admit that PCAOB filed a Counterclaim against Plaintiff on April 30, 2021, based upon Ms. Lee's serious misconduct while employed at the PCAOB.  The Counterclaim speaks for itself.  Defendants deny all other allegations contained in Paragraph 80.

81.     Defendants deny the allegations contained in Paragraph 81 of the Amended Complaint.

82.     Defendants admit that Ms. Lee filed a Charge of Discrimination dated May 7, 2021, and state that the Charge speaks for itself.  Defendants deny all other allegations in Paragraph 82.

83.     The allegations contained in Paragraph 83 of the Amended Complaint constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations.

## Count I – VIOLATION OF D.C. Code § 2-1402.11
### (Discrimination Based on Political Affiliation, Race, and National Origin)
### (Against Both Defendants)

84.     In response to the allegations contained in Paragraph 84 of the Amended Complaint, Defendants restate each of their responses to Paragraphs 1-83, above.

85.     Defendants deny the allegations contained in Paragraph 85 of the Amended Complaint.

86.     Defendants deny the allegations contained in Paragraph 86 of the Amended Complaint.

87.     Defendants deny the allegations contained in Paragraph 87 of the Amended Complaint.

88.     Defendants deny the allegations contained in Paragraph 88 of the Amended Complaint.

89.     Defendants deny the allegations contained in Paragraph 89 of the Amended Complaint.

90.     Defendants deny the allegations contained in Paragraph 90 of the Amended Complaint.

91.　　Defendants deny the allegations contained in Paragraph 91 of the Amended Complaint.

92.　　Defendants deny the allegations contained in Paragraph 92 of the Amended Complaint.

93.　　Defendants deny the allegations contained in Paragraph 93 of the Amended Complaint.

94.　　Defendants deny the allegations contained in Paragraph 94 of the Amended Complaint.

95.　　The allegations contained in Paragraph 95 of the Amended Complaint constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations.

96.　　Defendants deny the allegations contained in Paragraph 96 of the Amended Complaint.

**Count II – VIOLATION OF D.C. Code § 2-1402.61(a)**
**(Retaliation)**
**(Against PCAOB)**

97.　　In response to the allegations contained in Paragraph 97 of the Amended Complaint, Defendants restate each of their responses to Paragraphs 1-96, above.

98.　　Defendants deny the allegations contained in Paragraph 98 of the Amended Complaint.

99.　　Defendants deny the allegations contained in Paragraph 99 of the Amended Complaint.

100.　　Defendants deny the allegations contained in Paragraph 100 of the Amended Complaint.

16

101.     Defendants deny the allegations contained in Paragraph 101 of the Amended Complaint.

102.     Defendants deny the allegations contained in Paragraph 102 of the Amended Complaint.

103.     Defendants deny the allegations contained in Paragraph 103 of the Amended Complaint.

104.     Defendants deny the allegations contained in Paragraph 104 of the Amended Complaint.

**Count III – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**(Discrimination Based on Race and National Origin)**
**(Against PCAOB)**

105.     In response to the allegations contained in Paragraph 105 of the Amended Complaint, Defendants restate each of their responses to Paragraphs 1-104, above.

106.     Defendants deny the allegations contained in Paragraph 106 of the Amended Complaint.

107.     Defendants deny the allegations contained in Paragraph 107 of the Amended Complaint.

108.     Defendants admit the allegations contained in Paragraph 108 of the Amended Complaint on the basis of information and belief.

109.     Defendants deny the allegations contained in Paragraph 109 of the Amended Complaint.

## Count IV – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
### (Retaliation)
### (Against PCAOB)

110.    In response to the allegations contained in Paragraph 110 of the Amended Complaint, Defendants restate each of their responses to Paragraphs 1-109, above.

111.    Defendants deny the allegations contained in Paragraph 111 of the Amended Complaint.

112.    Defendants deny the allegations contained in Paragraph 112 of the Amended Complaint.

113.    Defendants deny the allegations contained in Paragraph 113 of the Amended Complaint.

114.    Defendants deny the allegations contained in Paragraph 114 of the Amended Complaint.

115.    Defendants deny the allegations contained in Paragraph 115 of the Amended Complaint.

116.    Defendants deny the allegations contained in Paragraph 116 of the Amended Complaint.

## Count V – ABUSE OF PROCESS
### (Against PCAOB)

117.    In response to the allegations contained in Paragraph 117 of the Amended Complaint, Defendants restate each of their responses to Paragraphs 1-116, above.

118.    Defendants deny the allegations contained in Paragraph 118 of the Amended Complaint.

119.    Defendants deny the allegations contained in Paragraph 119 of the Amended Complaint.

120.    Defendants deny the allegations contained in Paragraph 120 of the Amended Complaint.

121.    Defendants deny the allegations contained in Paragraph 121 of the Amended Complaint.

122.    Defendants deny the allegations contained in Paragraph 122 of the Amended Complaint.

123.    Defendants deny the allegations contained in Paragraph 123 of the Amended Complaint.

124.    Defendants deny the allegations contained in Paragraph 124 of the Amended Complaint.

125.    Defendants deny that Plaintiff is entitled to the relief she seeks or to any other relief whatsoever.

126.    All allegations not specifically admitted, denied, or otherwise addressed herein are denied.

## **OTHER DEFENSES**

1.    Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted.

2.    Plaintiff's claims are barred, in whole or in part, based on the failure of the Amended Complaint to allege a sufficient legal and/or factual basis for the damages sought.

3.    Plaintiff's claims are barred, in whole or in part, by the statute of limitations, and are not saved by any continuing violations doctrine.

4.    Plaintiff's claims are barred, in whole or in part, by the *Faragher/Ellerth* affirmative defense or equivalent affirmative defenses under state or local law because PCAOB

established and complied with policies for the prevention and correction of unlawful discriminatory practices by employees, and Plaintiff failed to take advantage of these preventive and corrective measures.

5.      Plaintiff's claims are barred, in whole or in part, because the employment and other decisions that form the basis of the Amended Complaint were based upon legitimate, non-discriminatory and non-retaliatory factors.

6.      Plaintiff's claims are barred, in whole or in part, because Defendants acted without discriminatory or retaliatory animus in making the decisions that form the basis of the Amended Complaint.

7.      Plaintiff's claims are barred, in whole or in part, because Plaintiff suffered no damage as a result of any alleged wrongdoing and/or because of the failure of Plaintiff to mitigate her damages, if any.

8.      Plaintiff's claims are barred, in whole or in part, because Defendants did not act with the requisite degree of knowledge or malice to entitle Plaintiff to punitive damages.

9.      Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, acquiescence, estoppel, and/or unclean hands.

10.      Plaintiff's claims are barred, in whole or in part, by the after-acquired evidence doctrine.

Defendants reserve the right to raise additional equitable or other defenses upon further investigation and discovery.

WHEREFORE Defendants hereby request that:

(a)      the Amended Complaint be dismissed with prejudice and all relief requested therein be denied;

(b)      Defendants be awarded their reasonable attorneys' fees and costs incurred in this matter; and

(c)      Defendants be afforded such other relief as the Court deems appropriate.

## COUNTERCLAIM BY PCAOB AGAINST SUE LEE

Defendant/Counter-Plaintiff, the Public Company Accounting Oversight Board ("PCAOB"), by counsel and pursuant to Federal Rule of Civil Procedure 13, brings this Counterclaim against Plaintiff/Counter-Defendant Sue Lee, stating as follows:

### Background

1.      PCAOB is a nonprofit corporation created by the Sarbanes–Oxley Act of 2002 (the "Act").  PCAOB's primary mission is to oversee the audits of public companies and SEC-registered brokers and dealers in order to protect investors and further the public interest in the preparation of informative, accurate, and independent audit reports.

2.      PCAOB is governed by a five-member Board, the members of which are appointed to staggered five-year terms by the Securities and Exchange Commission, after consultation with the Chair of the Board of Governors of the Federal Reserve System and the Secretary of the Treasury.

3.      William D. Duhnke, III served as the Chair of the Board and Chief Executive Officer of PCAOB during the relevant time period.

### PCAOB's Employment of Sue Lee

4.      On or about October 30, 2018, Ms. Lee applied for employment with PCAOB, specifically seeking the position of General Counsel.

5.      Mr. Duhnke was among the PCAOB officers and directors who interviewed Ms. Lee and evaluated her candidacy, and in response to her application PCAOB offered Ms. Lee the position of Chief Risk Officer.

6.      Ms. Lee accepted the PCAOB's offer, and she commenced her employment in approximately February of 2019.

7.      Prior to learning of Ms. Lee's misconduct that formed the basis for her termination, Mr. Duhnke was perhaps her biggest advocate during her tenure at PCAOB.

8.      On or about July 21, 2019, Mr. Duhnke appointed Ms. Lee to serve as Acting Chief Administrative Officer, reporting directly to Mr. Duhnke.  Later, in December 2019, Mr. Duhnke approved of Ms. Lee's promotion from Acting Chief Administrative Officer to Chief Administrative Officer.

9.      As Acting CAO, and later as CAO, Ms. Lee was tasked with providing executive oversight to the Office of Human Resources, the Office of Finance, the Budget Office, and the Facilities Department within the Office of Administration.

10.     Ms. Lee's responsibility for the Budget Office was particularly significant. Among other things, her job description notes that the CAO is expected to exhibit "[u]nquestionable integrity and ethics" and to ensure that her behavior "is consistent with the highest ethical standards and aligns with the values of the organization."

11.     Unfortunately, Ms. Lee failed to live up to these standards.

## Ms. Lee's Malfeasance and Misconduct

### *Unapproved, Excessive, and Inappropriate Travel*

12.     In the fall of 2020, during the height of the COVID-19 pandemic, PCAOB learned that Ms. Lee had for many months been engaging in unapproved, excessive, and/or inappropriate travel at PCAOB's expense.

13.     Even worse, PCAOB uncovered evidence that proved that much of Ms. Lee's purported "business travel" was not only unnecessary to PCAOB, but also was, in reality, personal in nature.  Ms. Lee had maintained a residence in the Boston area throughout this period, and, on several occasions, she charged PCAOB for trips to the Boston area during which she visited her home but did not visit the area PCAOB office or, if she did, stayed for only a few minutes.

14.     In particular, and as specified in more detail below, between October 10, 2019, and October 10, 2020, Ms. Lee took at least 36 trips to the Boston area.  More than ten of those trips occurred during PCAOB's mandatory teleworking period, which was initiated due to the Covid-19 pandemic, when such travel was prohibited and when virtually all of the employees were working remotely and very few, if any, would have been present in the office during her visits.

15.     For example, Company records reflect the following trips, among others:

        a)      On August 12, 2019, Ms. Lee booked an evening flight from Washington, D.C., to Boston, where she spent the night.  The following morning, she flew from Boston to Chicago, where she spent approximately one hour in PCAOB's Chicago office.  She returned to Boston that afternoon and went directly to her Cambridge home without visiting the PCAOB Boston office.  After spending the night in her home, she returned to Washington, D.C. early the

following morning.  In other words, instead of flying directly from Washington, D.C. to Chicago, Ms. Lee routed herself through Boston on both legs of the trip, apparently to attend to personal matters in Boston.

        b)      Between November 12 and November 15, 2019, Ms. Lee took three separate trips to and from Boston.  On November 12, she took an afternoon flight from Washington, D.C., to Boston, spent the night at her home in Cambridge, and the following morning took an Uber directly from her home to the Boston airport and flew back to Washington on a flight that departed at 7:00 a.m.  Later that same day, she flew back to Boston, departing at about 9:00 p.m. and arriving at about 10:30 p.m.  The next morning, she arrived at PCAOB's office at 9:58 a.m., left for the airport a mere seven minutes later, and flew back to Washington. The pattern repeated itself that evening, when Ms. Lee again took an evening flight to Boston, went directly to her personal residence, visited the PCAOB office for a total of fifteen minutes the following morning, and then returned to the Boston airport to fly back to Washington.  Over the course of four days, PCAOB paid for Ms. Lee to fly to and from Boston three times so that she could spend a total of 21 minutes in the PCAOB office.

        c)      On December 2, 2019, Ms. Lee took an 11:30 a.m. flight from Washington, D.C. to Boston, arriving at approximately 1:00 p.m.   More than three hours later, at just after 4:00 p.m., she arrived in the PCAOB office, stayed for 21 minutes, then departed for her home, where she remained for just over an hour before flying back to Washington.

        d)      Two days later, on December 4, 2019, Ms. Lee flew to Boston, arriving at approximately noon.  Again, she arrived at the PCAOB office more than three hours later, at 3:13 p.m.  She departed ten minutes later, at 3:23 p.m., and flew back to Washington, D.C., having spent only ten minutes at PCAOB's office.

e)      Between December 13, 2019 and December 17, 2019, a five-day span that crossed a weekend, Ms. Lee took three separate one-day trips from Washington, D.C. to Boston, flying to Boston and back each day on Friday, Monday, and Tuesday.  On one of those days, she landed in Boston at 6:00 p.m., traveled to her Cambridge home and back to the Boston airport, and then departed Boston at 9:00 p.m. – a mere three hours after she arrived.

f)      On January 16, 2020, Ms. Lee flew from Washington, D.C., to Boston on a late-night flight, arriving at 11:30 p.m.  The next morning, she visited the Boylston Street area, a popular area of Boston near the Boston Public Garden.  She left Boston on a noon flight and arrived back in Washington, D.C. less than 16 hours after she had departed.

g)      On January 24, 2020, Ms. Lee again traveled to Boston for only a few hours, arriving at approximately 3:00 p.m. and departing six hours later at 9:00 p.m. She again visited the Boylston Street area on this date.

h)      Ms. Lee traveled again from Washington to Boston on March 4, 2020, leaving the District at 1:30 p.m.  Although it is unknown whether she conducted any PCAOB business on March 5, it appears she did not, as she was booked on an 11:00 a.m. flight back to D.C. but managed to visit the Boylston Street area again before she departed.  She arrived back in Washington less than twenty-four hours after she departed.

i)      Between June 15, 2020 and June 17, 2020, Ms. Lee was again in Boston, but she logged in to her office computer from her home in Cambridge, and remained logged in from that location (and not from the Boston office) for the duration of her stay.

j)      Ms. Lee traveled from Washington, D.C. to Boston on July 19, 2020, on an evening flight and returned the following afternoon.  There is no evidence that she logged into

the Company's network during this trip at all; however, it appears she did manage to visit the Boylston Street area.

16.     Ms. Lee took many other unauthorized, non-essential, and/or questionable trips, including but not limited to one-day trips to Boston in 2019 on August 26, September 30, October 21, and November 1; and in 2020 on January 9, January 13, March 9, March 20, and March 27.

17.     Ms. Lee has attempted to explain her repeated travel to Boston without success. She has argued that because she had been tasked with assessing occupancy and use rates of PCAOB's satellite offices, the travel was necessary.

18.     This explanation is false.  Several of Ms. Lee's trips to Boston occurred during PCAOB's mandatory teleworking period, when virtually all of the Boston-based employees were working remotely and few, if any, were present in the office.

19.     Moreover, in addition to its satellite office in Boston, PCAOB had satellite offices in Houston, Tampa, Fort Lauderdale, and Los Angeles, with regional offices in several other cities.  Ms. Lee took far more trips to Boston – where she owns a home and spent time engaged in personal pursuits – than she did to any other office.  Between October 10, 2019 and October 10, 2020, Ms. Lee took at least thirty-six trips to Boston, compared to eight trips to all other PCAOB offices combined.

20.     The majority of these trips were scheduled and taken by Ms. Lee on her own initiative, without advance notice to or approval of Mr. Duhnke.

21.     On some occasions, Ms. Lee appeared at the office unannounced and without a computer, occupied an empty office, barely spoke to the employees, shot brief video of empty offices and equipment rooms, and then departed after ten or twenty minutes.

22.     On one occasion – November 6, 2019 – she traveled to Boston, took over an unoccupied office at the PCAOB office, and delivered a virtual presentation to PCAOB's Boston-area staff via Webex.  She delivered the virtual presentation while the PCAOB's staff listened and viewed the presentation only ten feet away in a nearby office.  The presentation could have easily been delivered in the same format from Washington, D.C.

23.     It appears to PCAOB that Ms. Lee would sporadically visit the Boston office for short periods of time to justify treating a trip as a business trip when the principal or sole purpose of the visit was personal in nature.

24.     Ms. Lee knew that she was bilking PCAOB for personal travel expenses, because at one point she reprimanded a subordinate for sharing her travel schedule with others, and she instructed the subordinate not to share her travel calendar with anyone without her permission.  Additionally, in 2020 she began omitting her Uber pick-up and drop-off locations from many of her expense submissions.

25.     Each time she submitted requests for expense reimbursements for these trips and their associated expenses, Ms. Lee misrepresented to PCAOB that the costs were bona fide business expenses necessarily incurred in connection with her official duties for PCAOB.  These representations were demonstrably false.

26.     In addition, Ms. Lee took liberty with the Company's reimbursement policy.  For example, she sought reimbursement for Apple Airpods, purportedly as a travel expense.

27.     Upon learning of Ms. Lee's excessive and highly suspicious travel, as well as her misconduct in connection with the Workday Project detailed below, PCAOB immediately commenced an internal investigation.  The investigation was conducted by PCAOB's independent Office of Internal Oversight and Performance Assurance ("IOPA").  IOPA is

charged with conducting performance and quality assurance reviews, audits, and inquiries to detect and deter waste, fraud, abuse, and mismanagement in PCAOB programs and operations.

28.     Following its investigation, IOPA concluded, among other things: "We were unable to find any reasonable explanation for the extent of Ms. Lee's travel to the Boston area, in context of the travel policy requirement of 'good stewardship of PCAOB resources.'"

### *Workday Implementation Team*

29.     At the time it investigated Ms. Lee's misuse of PCAOB resources to fund personal travel, IOPA also reviewed her conduct in connection with her work with the Workday Implementation Team, as Ms. Lee's conduct in connection with this team had been the subject of several complaints from employees involved with this project.

30.     The Workday Project was an important PCAOB initiative involving a conversion of the existing platform for payroll, timekeeping, and other HR functions to a new platform.

31.     Ms. Lee assumed a larger role in the Workday Project in the spring of 2020 when another employee took leave.

32.     During Ms. Lee's stewardship of this project, employees on the team began complaining about her conduct.  For example, employees complained that Ms. Lee moved timelines, deflated team morale, engaged in conflicts with others in leadership roles, limited communication, and similar things.

33.     Some of these concerns were relayed confidentially by employees to PCAOB's Chief of Staff in early September 2020.

34.     Ms. Lee was apprised of these complaints on or about October 9, 2020, at which time the Chief of Staff stated that she would join the Workday Steering Committee to help improve communications.

35.     Almost immediately after learning of the complaints and of the Chief of Staff's anticipated involvement going forward, Ms. Lee scheduled a meeting with the full team which took place on October 13, 2020.  Members of the team reported that during that meeting, Ms. Lee was visibly angry, reported that someone on the team had complained about her, made it known that she would learn the identity of those who complained, and threatened that such "actions have consequences" – a phrase she repeated over and over again to her team members. She also canceled meetings and threatened to dissolve the team completely, and she threatened to "throw every decision" at others in leadership roles, hoping to overwhelm them until they "give up."

36.     PCAOB employees that had been forced to endure Ms. Lee's tirade felt they had been attacked for expressing concerns about her conduct. Some stated they were "terrified" of Ms. Lee because of her conduct, and others said her actions and criticism were unfair.

37.     These actions were detrimental to the organization, contrary to the values the PCAOB demands of its senior leaders, and hindered accomplishment of a critical PCAOB initiative.

38.     After investigating Ms. Lee's conduct in connection with the Workday project, IOPA concluded, among other things, that Ms. Lee's behavior "failed to demonstrate responsible leadership, jeopardizing the timely and successful implementation of a key Board initiative." IOPA also found that "Ms. Lee took significant management actions relative to WorkDay [sic] based not upon the best interests of the organization, but rather upon her own personal agenda in seemingly wanting both to punish her staff for involving the Chairman's office and to hinder the involvement of the Chief of Staff in a critical initiative."  IOPA continued:  Ms. Lee presented "an inappropriate, retaliatory posture, inconsistent with the values of the Organization."

29

**PCAOB's Decision to Terminate Sue Lee's Employment**

39.     Having been apprised of the results of the IOPA Report, Chairman Duhnke convened a telephone conference call with the PCAOB Board of Directors.  All Board Members were provided copies of the IOPA Report.

40.     Chairman Duhnke informed the other Board members of the facts and circumstances addressed in the IOPA Report and stated that he believed PCAOB should terminate Ms. Lee's employment immediately.  All members of the Board were consulted.  None of the Board members objected.

41.     Chairman Duhnke telephoned Ms. Lee the same day and notified her that her employment had been terminated.

42.     During their discussion, Chairman Duhnke specifically advised Ms. Lee, among other things, that: (i) the termination decision was reached after consideration of her abuse of fellow employees in connection with Workday Project and her excessive travel; and (ii) the PCAOB Board of Directors had been consulted regarding the decision.

**Count I:  Conversion**

43.     PCAOB incorporates and re-states herein each of the foregoing allegations in Paragraphs 1 - 42 of its Counterclaim.

44.     Ms. Lee incurred personal expenses when she engaged in personal, non-business travel between Washington, D.C. and the Boston area.

45.     Ms. Lee misrepresented the nature of this travel to PCAOB when she represented that the travel was being undertaken for business purposes.

46.     Ms. Lee exercised dominion and control over PCAOB property when she: (i) used PCAOB protocols to require PCAOB to pay for expenses she incurred in connection with

30

personal travel; and/or (ii) submitted expense reports pursuant to which she sought and received reimbursement for funds expended in connection with personal travel.

47.     By taking these actions, Ms. Lee unlawfully exercised ownership, dominion, or control over PCAOB's personal property.

48.     Ms. Lee's conversion of PCAOB's personal property to her own use denied PCAOB its right to use its personal property.

49.     Ms. Lee's actions were knowing and intentional, in that Ms. Lee knew her actions deprived PCAOB of the use of its own property, and Ms. Lee intended this result.

50.     As a direct and proximate result of Ms. Lee's unlawful actions, PCAOB has suffered damage.

## Count II:  Breach of Fiduciary Duty

51.     PCAOB incorporates and re-states herein each of the foregoing allegations in Paragraphs 1 - 50 of its Counterclaim.

52.     During her employment by PCAOB, Ms. Lee held the high-level, C-Suite positions of Chief Risk and Compliance Officer, Acting Chief Administrative Officer, and Chief Administrative Officer.

53.     In these roles, Ms. Lee occupied positions of trust and confidence and owed PCAOB fiduciary duties, including the duties of care, loyalty and good faith.

54.     Ms. Lee breached these duties when she, among the other acts and omissions described above: (i) misrepresented personal travel expenses as business expenses; (ii) used PCAOB protocols to require PCAOB to pay for her personal travel expenses; and (iii) submitted expense reports pursuant to which she sought and received reimbursement for funds expended in connection with personal travel.

55.     Ms. Lee's actions were knowing and intentional, in that Ms. Lee knew her representations were false and that she was acting in derogation of the fiduciary duties she owed to PCAOB.

56.     As a direct and proximate result of Ms. Lee's unlawful actions, PCAOB has suffered damage.

### Count III – Unjust Enrichment

57.     PCAOB incorporates and re-states herein each of the foregoing allegations in Paragraphs 1 - 56 of its Counterclaim.

58.     During the course of her employment by PCAOB, Ms. Lee: (i) misrepresented personal travel expenses as business expenses; (ii) used PCAOB protocols to require PCAOB to pay for her personal travel expenses; and (iii) submitted expense reports pursuant to which she sought and received reimbursement for funds expended in connection with personal travel.

59.     As a result of this conduct, Ms. Lee has been unjustly enriched at PCAOB's expense.

60.     PCAOB has suffered damage as a result of Ms. Lee's conduct.

61.     Equity and good conscience require Ms. Lee to repay to PCAOB an amount equivalent to the amount by which she has been unjustly enriched by the conduct described here.

### Prayer for Relief

Wherefore, PCAOB asks the Court to enter judgment in its favor on all counts in the Counterclaim and to:

(a)     Enter judgment in PCAOB's favor on all claims in the Counterclaim;

(b)     Order Ms. Lee to pay PCAOB compensatory damages in an amount to be proven at trial, inclusive of: (i) all amounts paid by PCAOB for Ms. Lee's personal travel and expenses;

and (ii) all amounts PCAOB reimbursed to Ms. Lee for personal expenses that Ms. Lee had represented were business expenses; and

   (c)  Order Ms. Lee to repay to PCAOB an amount equivalent to the value of her compensation and benefits she was paid or provided during the period of her disloyalty; and

   (d)  Award PCAOB punitive damages in an amount to be proven at trial; and

   (e)  Order such other relief as the Court deems just and proper.

         Respectfully Submitted,


         /s/**Michael J. Lorenger**_____
         Michael J. Lorenger (D.C. Bar 454146)
         Lorenger & Carnell PLC
         651 S. Washington St.
         Alexandria, Virginia 22314
         703-684-1800 (Phone)
         703-684-1805 (Fax)
         mlorenger@lorengercarnell.com

         Counsel for Defendants PCAOB and William
         Duhnke III and for Counter-Plaintiff PCAOB

## <u>JURY TRIAL DEMANDED</u>

Defendants PCAOB and William D. Duhnke, III, and Counter-Plaintiff PCAOB, demand

a trial by jury on all matters in this litigation.

Respectfully Submitted,


/s/**Michael J. Lorenger**
Michael J. Lorenger (D.C. Bar 454146)
Lorenger & Carnell PLC
651 S. Washington St.
Alexandria, Virginia 22314
703-684-1800 (Phone)
703-684-1805 (Fax)
mlorenger@lorengercarnell.com

Counsel for Defendants PCAOB and William D.
Duhnke, III and for Counter-Plaintiff PCAOB

34

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2021, I filed the foregoing Answer and Counterclaim with the Court's electronic filing system, which will automatically provide notice to all counsel of record.  In addition, I served a copy on Plaintiff's counsel by email:

David Moon
david@lipplawfirm.com
Sarah Mugmon
sarah@lipplawfirm.com
The Lipp Law Firm
4000 Legato Rd. – Suite 1100
Fairfax, Virginia 22033

/s/**Michael J. Lorenger**
Michael J. Lorenger