## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUE LEE,<br><br>      Plaintiff and Counter-Defendant,<br><br>    v.<br><br>PUBLIC COMPANY ACCOUNTING<br>OVERSIGHT BOARD, *et al.*<br><br>      Defendants and Counter-Claimants. | Civil Action No. 21-1006 (CKK) |

## MEMORANDUM OPINION AND ORDER
(June 28, 2023)

In this employment-discrimination action, Plaintiff Sue Lee ("Plaintiff" or "Lee") contends that Defendants Public Company Accounting Oversight Board ("PCAOB") and William D. Duhnke, III ("Duhnke" and, collectively, "Defendants") unlawfully fired her and retaliated against her by filing counterclaims in response to her complaint in this action. Plaintiff has moved to compel a vast amount of discovery that, she hopes, will uncover evidence of other instances of discrimination and retaliation. Though Defendants' requests are substantially overbroad, she is entitled to at least some discovery that Defendants have withheld. Therefore, and upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's [45] Motion to Compel Discovery.

---

[1] The Court's consideration has focused on the following documents:
- Plaintiff's Amended Complaint ("Am. Compl."), ECF No. 18;
- Plaintiff's Motion to Compel Discovery ("Mot." or "Motion"), ECF No. 45;
- Defendant's Opposition to Plaintiff's Motion to Compel ("Opp."), ECF No. 50; and
- Plaintiff's Reply Supporting Her Motion to Compel Discovery ("Repl."), ECF No. 51.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

# I.     BACKGROUND

## A.  Factual Background

Plaintiff, an Asian American woman, is a former high-level employee of Defendant

PCAOB, a private regulator of accounting firms in the United States.  Am. Compl. ¶ 8; *see also*

*Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 484-86 (2010) (describing role of PCAOB).

Plaintiff joined PCAOB at the C-suite level, first as its Chief Risk Officer in February 2019.

Am. Compl. ¶ 8.  Several months later, she was promoted to Chief Administrative Officer.  *Id.* ¶

11.  Throughout her tenure, she reported directly to Defendant Duhnke, then-Chief Executive

Officer, who in turn reported to PCAOB's governing board ("Board").  *Id.* ¶ 9.  Plaintiff claims

that, at the onset of the COVID-19 pandemic in early- to mid-2020, Defendant Duhnke began to

make comments disparaging of Plaintiff's perceived ethnicity (Chinese-American) and

Plaintiff's politics (left of center).  *Id.* ¶¶ 30-43.  After consultation with the Board and with their

approval, Defendant Duhnke terminated Plaintiff's employment in October 2020.[2]  Defendants

claim that they terminated Plaintiff because of "excessive, inappropriate, and personal travel at

the PCAOB's expense[,]" lack of productivity, and "several complains concerning Plaintiff's

hostile and retaliatory interactions with many of the staff members working with her[.]"  Opp. at

2.

Plaintiff, on the other hand, maintains that these justifications are either false or

pretextual, and that Defendant Duhnke instead engineered Plaintiff's termination because of

racial and political animus.  *See* Am. Compl. ¶ 91-93. Evidently in the alternative, Plaintiff

---

[2] More precisely, Plaintiff pleads in the alternative that Defendant Duhnke secured the Board's
approval through "false and pretextual" reasons.  Am. Compl. ¶ 55.  She primarily pleads that he
fired Plaintiff without first consulting the Board.  The Court employs Plaintiff's alternative here
because, for the reasons explained further below, it entitles her to broader discovery than if
Defendant Duhnke had acted alone.

further argues that the Board worked in concert with Defendant Duhnke to secure her ouster because PCAOB has historically "afforded white employees charged with misconduct . . . significantly more due process during initiated investigations[.]"  Am. Compl. ¶ 62; *see also id.* ¶ 106 (alleging that PCAOB "permitt[ed] Defendant Duhnke to discriminate against Ms. Lee in PCAOB's workplace due to her Asian ethnicity and Chinese national origin").

Plaintiff further brings retaliation and abuse of process claims against PCAOB.  She alleges that PCAOB, evidently through Defendant Duhnke (among others), authorized "threats to initiate [] counterclaims against [Plaintiff] [should she file suit]" in order to retaliate against Plaintiff for "voicing concerns of discriminatory conduct by Defendants" ostensibly by threatening a lawsuit.  *See id.* ¶¶ 99, 111.  She also bases her retaliation and abuse of process claims on PCAOB, in fact, filing such counterclaims (for, among other things, conversion of PCAOB's financial resources).  *Id.* ¶¶ 103, 114, 122; *see also* Defs.' Answer and Counterclaim[s] ¶¶ 43-61, ECF No. 19 (June 25, 2021) (counterclaims).

### B.  Interrogatories and Requests for Production at Issue

At issue are three interrogatories and two requests for production.  The Court presents each discovery request below, edited to reflect Plaintiff's subsequent, voluntary concessions.

1.  Request for Production No. 10:  Produce all documents related to any complaints conveyed to PCAOB's human resources department, employee hotline, Office of Internal Oversight and Performance Assurance  made by any PCAOB employee and/or whistleblower regarding Mr. Duhnke since 2017 or any misconduct by Mr. Duhnke concerning any alleged discriminatory actions based upon race, ethnicity and/or political affiliation, including documents reflecting investigations of such complaints and/or misconduct and the results thereof, whether conducted by PCAOB, the U.S. Securities & Exchange Commission, or any third parties commission to investigate Mr.

> Duhnke, including but not limited to Sullivan & Cromwell LLP and Covington &
> Burling LLP [("Covington")].

Defendants claim this request for production is overbroad, and an undue burden, and seeks

materials protected by the attorney-client privilege and the work-product doctrine.  Mot. at 4; Opp.

at 9-10.

> 2.  Interrogatory No. 18:  Identify each current and/or former PCAOB employee with he
>     title "Associate Director" or higher who submitted a complaint to PCAOB alleging
>     discrimination or retaliation by Mr. Duhnke, and, for each identified person, describe
>     the nature of such complaint(s).

Defendants claim that this request for production is overbroad insofar as it seeks information

related to allegations of retaliation by Defendant Duhnke unrelated to EEO-protected activity.

Opp. at 11.

> 3.  Request for Production No. 9:  Produce all documents related to PCAOB's termination
>     and/or discipline of any PCAOB employee with the title "Associate Director" or higher
>     for alleged misconduct since 2017, including, but not limited to, any investigation of
>     such misconduct and the results thereof, documents reflecting the terms on which any
>     such employee was terminated, including those related to settlements or severance
>     agreements, and any related action taken by PCAOB's Board of Governors.

Defendants claim that this request for production is overbroad, arguing mainly that the time period

should be confined to Defendant Duhnke's tenure at PCAOB.  *See* Opp. at 5-6.

> 4.  Interrogatory No. 21:  Identify every instance in which PCAOB conducted an
>     investigation of a PCAOB employee with the title "Associate Director" or higher in
>     connection with alleged misconduct since January 1, 2015, including in your answer

the nature of the alleged misconduct, the dates during which such investigation took place, and the results of such investigation.

Defendants claim that this request for production is overbroad and an undue burden, arguing mainly that the time period should be confined to Defendant Duhnke's tenure at PCAOB. *See* Opp. at 5-6.

> 5. **Interrogatory No. 22:** Identify every PCAOB with the title "Associate Director" or higher who was terminated by PCAOB since January 1, 2015 as a result of any alleged misconduct by such person.

Defendants claim that this request for production is overbroad and an undue burden, arguing mainly that the time period should be confined to Defendant Duhnke's tenure at PCAOB. *See* Opp. at 5-6.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Procedure 26(b)(1), a party must produce requested "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." A party seeking discovery through an interrogatory under Rule 33, the production of documents under Rule 34, or a deposition under Rule 30, and who believes that the opposing party has failed to meet its obligations under the Rules, may— after conferring in good faith with the opposing party—seek to compel a response. Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(i), (iii)-(iv). "The Federal Rules of Civil Procedure encourage the exchange of information through broad discovery." *In re Eng.*, 375 F.3d 1169, 1177 (D.C. Cir. 2004). Nevertheless, the Court may not "tolerate fishing expeditions, discovery abuse[,] and inordinate expense involved in overbroad and far-ranging discovery requests." *Pederson v. Preston*, 250 F.R.D. 61, 65 (D.D.C. 2008) (RCL) (internal quotation marks omitted).

## III.    DISCUSSION

The present Motion presents three main legal issues.  First, insofar as Plaintiff seeks materials obtained and created by at least two law firms, the Court must determine whether those materials are protected by the attorney-client privilege and/or the work-product doctrine. Second, the Court must determine whether the interrogatories and requests for production related to so-called comparators (others accused of workplace misconduct) seek information and records beyond the scope of Plaintiff's discrimination and retaliation claims.  Third, the Court must determine the relevant time period for discovery.

In brief, first, the Court concludes that Defendants have not waived privilege.  Second, the Court concludes that each of Plaintiff's requests are overbroad insofar as they seek information unrelated to the forms of discrimination alleged.  Third, the Court agrees with Plaintiff that a time period beyond Defendant Duhnke's tenure is appropriate because Plaintiff has pleaded in the alternative of the PCAOB as an organization aided the forms of discrimination and retaliation alleged in Plaintiff's amended complaint.

### A.  Privilege and Work Product

As a threshold matter, Plaintiff argues that Defendants waived privileged when they did not explicitly note it in their response to Plaintiff's discovery requests.  Not so.  As Plaintiff correctly notes, absent good cause, a party waives an objection to discovery requests if they do not state it "within thirty days after service." *Fonville v. District of Columbia*, 230 F.R.D. 38, 42 (D.D.C. 2005).  The parties may, however, stipulate to a later period of time.  *See* Fed. R. Civ. P. 33(b)(2); 34(b)(2)(A).  Although the parties initially stipulated to a thirty-day period, ECF No. 34 at 2, it appears that the parties later agreed to a sixty-day period, because they both exchanged objections precisely sixty days after they each exchanged their discovery requests, *see* Opp. at 3.

Defendants stated, and Plaintiff does not contest, that Defendants served privileged and work-product objections contemporaneously with their remaining discovery responses.  *See* Opp. at 15 n.11.  Although Plaintiff characterizes Defendants' invocation of privilege "belated," Repl. at 8, the record belies otherwise, absent any contrary factual assertion by Plaintiff.[3]

Having concluded that Defendants did not waive any such objections, the Court must determine the extent to which Request for Production No. 10 demands information protected by the attorney-client privilege or the work-product doctrine.  Defendants aver, and Plaintiff does not contest, that PCAOB retained each law firm in order to obtain legal advice regarding potential unlawful behavior that might be the subject of litigation, if only in part.  *See* Opp. at 13 n.8, 14, 16.  Recall that Plaintiff seeks more than the complaints themselves that may have been collected incident to the law firms' internal investigations, but "all documents related to" such complaints.  This request includes emails between attorneys and Defendants regarding such complaints, memoranda regarding such complaints, and informal attorney impressions generated during the investigations, at least some in furtherance of conveying or obtaining legal advice.  Such documents are obviously both privileged and subject to the work-product doctrine.  *See In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759 (D.C. Cir. 2014) (communications privileged where a primary purpose was for legal advice); *United States v. Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010) (noting that this jurisdiction employs the "because of" test, which provides that "material generated in anticipation of litigation may also be used for ordinary business purposes without losing its protected status").

---

[3] Additionally, the Court notes that *both* parties would have waived privilege if they did not consent to a sixty-day delay between service of discovery requests and service of objections.

Plaintiff appears to focus her request, however, on "documents collected by Covington from [] PCAOB (and potentially others) during the course of its review of Plaintiff's claims." Mot. at 5.  Many of these documents are also subject to the attorney-client privilege and work-product doctrine.  For example, interim reports generated by Covington during its investigation would likely be subject to the work-product doctrine, because they "would not have been created in substantially similar form if litigation were not anticipated."  *EEOC v. Geo. Wash. Univ.*, 342 F.R.D. 161, 182 (D.D.C. 2022) (GMH/CKK). Even certain "[d]ocuments collected by an outside investigator tasked with investigating Plaintiff's claims[,]" which Plaintiff seeks, may be subject to the attorney-client privilege where "the purpose of those communications was to marshal facts for counsel to use in rendering legal advice."  *Id.* at 171.

That said, the Court is not in a position to answer whether a certain document is protected from disclosure, because Defendants have not produced a privilege log.  Certainly, the Court agrees with Defendants that Plaintiff is not entitled to "all documents requested by [PCAOB]'s outside legal counsel in the course of their privileged review" of allegations against Defendant Duhnke.  Opp. at 16.  Whether, however, there are certain documents in investigatory counsel's files that are relevant, proportional, and not privileged or work-product is a question for another time.

### B.  Comparators

Each of the discovery requests at issue seeks "comparator" evidence, i.e., instances of similar discrimination or retaliation against a similar employee.  Comparative information concerning an employer's treatment of individuals is relevant evidence in an individual discrimination claim, because if an employer treats some members of a protected class unfavorably, it is more likely that the employer has treated those employees unfavorably because

of they are members of that protected class. *See Cruz v. McAleenan*, 931 F.3d 1186, 1192 (D.C.
Cir. 2019). "Accordingly, evidence that white employees, or [liberal] employees, were
disciplined less severely for the sort of behavior for which [Plaintiff] was disciplined" is
probative of discriminatory intent. *See id.*

Yet comparator discovery is not boundless. In an age discrimination case, for example,
race discrimination against a plaintiff's coworkers is not probative of the claim of age
discrimination (even though it is unlawful). *See Childers v. Slater*, Civ. A. No. 97-0853
(RMU/JMF), 1998 WL 429849, at *4 (D.D.C. May 15, 1998). As such, comparator discovery is
relevant and proportional only if it is "limited to the same form of discrimination claimed by
[the] plaintiff, if limited to the same department or agency where [the] plaintiff worked, and if
limited to a reasonable time before and after the discrimination complained of." *Mitchell v.
Nat'l R.R. Passenger Corp.*, 208 F.R.D. 455, 460 (D.D.C. 2002). It must also be limited to "'the
individuals who are allegedly involved in that conduct.'" *Kargbo v. Nat'l R.R. Passenger Corp.*,
Civ. A. No. 15-0698 (RBW/GMH), 2016 WL 10998394, at *7 (D.D.C. Jan. 14, 2016) (quoting
*Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618-19 (D.D.C. 1983)).

Here, Plaintiff alleges race, gender, and political discrimination, and retaliation for
protected activity. As to Interrogatory No. 18, therefore, Plaintiff is entitled not to information
regarding *any* complaint of "discrimination or retaliation" by Defendant Duhnke, but complaints
of race, gender, and political discrimination, and retaliation for protected activity. Similarly, for
Request for Production No. 9 and Interrogatory No. 22, Plaintiff is not entitled to records
regarding termination and/or discipline of *any* of her peers after an investigation into workplace
misconduct, but only her peers who are also a member of one of her protected classes.
Conversely, Plaintiff is entitled to records regarding the *lack* of discipline following an

investigation for those who are *not* a member of one of her protected classes.  Finally, for

Request for Production No. 10, Defendants must not produce records regarding *any* "misconduct

by Mr. Duhnke concerning any alleged discriminatory actions based upon race, ethnicity and/or

political affiliation" but rather only alleged discriminatory actions based upon *Plaintiff's*

ethnicity or *Plaintiff's* political affiliation.[4]

### C.  Temporal Scope

Insofar as Plaintiff seeks comparator evidence through the discovery requests at issue, the

comparator inquiry is governed not just by the similarity of alleged discrimination (or lack

thereof), but further by when the alleged discrimination occurred.  *Glenn v. Williams*, 209 F.R.D.

279, 282 (D.D.C. 2002) ("Although acts occurring before the relevant statute of limitations

period may still be admissible to prove a plaintiff's timely claim, the request must be reasonably

limited.").  As a general rule, limiting a discovery "period to 'a time frame which merely

brackets the contested employment action would foreclose [a] plaintiff from elucidating past

practices or identifying a pattern.'"  *Nuskey v. Lambright*, 251 F.R.D. 3, 10 (D.D.C. 2008)

(quoting *Jackson v. Harvard*, 111 F.R.D. 472, 475 (D. Mass. 1986)). That said, where

termination is at issue, Defendants quite rightly note that discovery periods are usually defined to

be "coterminous with the tenure of the official who proposed [the] plaintiff's removal . . . and the

one who issued the final decision." *Willingham v. Ashcroft*, 226 F.R.D. 57, 62 (D.D.C. 2005).

Noting Plaintiff's allegations against Defendant Duhnke, Defendants argue that the discovery

---

[4]  Defendants also press an undue burden objection in their briefing were the Court to order
"PCAOB to produce the entirety of the Covington file."  Opp. at 18 n.14.  The Court having
substantially narrowed the scope of Request for Production No. 10, the Court will overrule this
objection without prejudice as moot.  To the extent that Defendants consider compliance with the
Court's ruling overly burdensome, Defendants may raise that issue at a later time, along with a
detailed explanation therefor.

period for comparator evidence must therefore be limited to Defendant Duhnke's tenure at
PCAOB.

Limiting the period here to just Defendant Duhnke's tenure, however, would misread
Plaintiff's allegations in her amended complaint.  Although the gravamen of the amended
complaint is Defendant Duhnke's misconduct, Plaintiff pleads in the alternative that the Board
tacitly supported it.  Am. Compl. ¶ 106.  More importantly, Plaintiff pleads in the alternative that
the Board (1) engineered her ouster with Defendant Duhnke knowing that the firing would be
based upon lies and pretext and (2) approved the counterclaims filed because of her protected
activity.  Am. Compl. ¶¶ 99, 111. In Plaintiff's telling, it is therefore not just Defendant Duhnke
who "issued the final [discriminatory and retaliatory] decision[s]," but the Board as well.  Their
tenure too should define the period of discovery, particularly so where comparator evidence is
limited to a small group of upper-level managers.  It is more art than science to determine the
"reasonable time before and after the discrimination complained of," *see Mitchell*, 208 F.R.D. at
460, and the equities are best served here by Plaintiff's proposed discovery period.  Therefore,
the Court will compel Defendants to produce discoverable information that was created or
occurred between January 1, 2017 and December 31, 2021.

## IV. CONCLUSION

Overall, the Court concludes:  (1) that investigatory counsel's files are presumptively
privileged and/or subject to the work-product doctrine; (2) that Defendants need only produce
comparator materials for peers in one or more of Plaintiff's protected classes, except for records
reflecting a lack of discipline of peers in none of Plaintiff's protected classes; and (3) that the
appropriate discovery period shall cover January 1, 2017 to December 31, 2021.

Accordingly, and for the foregoing reasons, it is hereby

**ORDERED**, that Plaintiff's [45] Motion to Compel Discovery is **GRANTED IN PART AND DENIED IN PART**.  It is further

**ORDERED**, that the parties shall submit a notice on or before **July 5, 2023** indicating that the discovery disputes discussed herein have been resolved, or, if not, a joint status report indicating the degree to which the discovery disputes discussed herein have not been resolved.

**SO ORDERED**.

Dated: June 28, 2023

　　　　　　　　　　　　　　/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge